```
              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF GEORGIA
                    ATLANTA DIVISION
```

BEVERLY MCCLENDON,
Individually and as next
friend of the minor child,
JEWEL CIERA WASHINGTON,

      Plaintiff,                CIVIL ACTION

   v.                      NO. 1:10-CV-3254-CAP

WARNER BROS. ENTERTAINMENT,
INC., et al.,

      Defendants.

### **O R D E R**

This matter is before the court on the defendants' motion for summary judgment [Doc. No. 31]. The motion is granted.

### I. Introduction

On October 22, 2009, Jewel Washington, then 15 years old, responded by email to an invitation on the website for The Tyra Banks Show ("the Show") seeking guests for a future episode on the topic of sexual addiction. In her email, Washington claimed to be a sex addict. Sometime after her initial email, a representative of the Show contacted Washington by phone to discuss the possibility of appearing on the Show. Washington was contacted on multiple occasions by phone for the same reason.

During at least one of these conversations, Washington impersonated her mother, Beverly McClendon, in order to lead the

Show to believe she had parental consent to appear on the Show and that her mother would accompany her to New York to film the episode. Washington also forged her mother's signature on the consent and release form. On the day before she was to depart for New York, Washington falsely informed the Show that her mother had been hospitalized and would therefore be unable to accompany her to the filming. Washington's contact with the Show, Vanessa Adamo, informed her that no minor would be allowed to appear on the program without an adult chaperone. Washington informed Adamo that her uncle would accompany her. She again impersonated her mother to convince the Show that the man who would accompany Washington to New York, Tafoya Sutton, was her uncle and that she had permission to travel to New York in his care. Sutton is neither Washington's uncle nor related to her in any way. However, Washington maintained that Sutton was her uncle for the duration of her trip to New York. Shortly after arriving in New York, Sutton signed a release form and provided a copy of his driver's license to the Show at the request of its representatives.

The episode of the Show on which Washington appeared was filmed on November 4, 2009, in New York. Washington was still 15 years old at this time. McClendon was unaware of Washington's

location throughout the entirety of her trip to New York and had nothing to do with the filming. Neither McClendon's name nor likeness was ever broadcast by the Show.

On October 8, 2010, plaintiff Beverly McClendon filed a complaint in which she asserts claims on her own behalf as well as on behalf of Jewel Washington. McClendon claims that, as a result of Washington's appearance on the Show and the subsequent broadcast of that appearance, the defendants violated McClendon's right to privacy. The plaintiff further claims the defendants were negligent in allowing Washington to appear on the Show. On November 30, 2011, the defendants moved for summary judgment [Doc. No. 31].

**II. Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure states, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(c)(1) provides that a party must support its summary judgment position by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." The party seeking summary

judgment bears the burden of demonstrating that no dispute exists as to any material fact. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970). This burden is discharged by "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). In determining whether the moving party has met its burden, a district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the nonmoving party has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Ultimately, the court's function is not to resolve issues of material fact, but rather to determine whether there are any such issues to be tried. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986). Facts that are disputed, but which do not affect the outcome of the case, are not material and thus will not preclude the entry of summary judgment. Id. at 248. Genuine disputes are those in which "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party," id., and, where the nonmoving party will bear the burden of proof at trial, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Id. at 252.

### III. Analysis

The complaint contains two counts. McClendon first claims the Show violated her right to privacy by televising her minor daughter's likeness without her consent. Secondly, McClendon claims the Show negligently breached its duties to obtain written consent from the Commissioner of Labor and Washington's school superintendent prior to filming Washington.

**A. Count I - Invasion of Privacy**

The plaintiff contends that the defendants violated McClendon's right to privacy by broadcasting her daughter's name and likeness on the Show without McClendon's consent. However, McClendon may not assert a claim on her own behalf based on the use of her daughter's likeness because Georgia law recognizes no relational right to privacy.

It is undisputed that neither McClendon's name nor likeness was used by defendants in the production of the Show. In Georgia,

invasion of privacy claims must be asserted by those whose privacies have been invaded. The plaintiff has made no plausible showing that Georgia recognizes a relational right to privacy. She cites only a concurring opinion of <u>Bazemore v. Savannah Hospital</u>, which speculates that a relational cause of action might have existed if circumstances had been different. 155 S.E. 194, 197 (Ga. 1930). <u>Bazemore</u> was an invasion of privacy suit initiated by the parents of a deceased infant against a hospital for allowing their infant's corpse to be photographed and against the photographer for distributing the photos. <u>Id.</u> While the concurrence to which the plaintiff refers does speculate that the parents still may have had a cause of action if the child had survived, the majority opinion pragmatically distinguishes <u>Bazemore</u> from any other cases that may consider the validity of a relational right to privacy by stating, "In this case the child was dead when the unauthorized acts were committed, and the right of action could not be in the child, but in the parents." <u>Id.</u> Therefore, the <u>Bazemore</u> holding is inapplicable to this matter.

Conversely, other Georgia cases seem to refute the existence of a relational right to privacy. In <u>Pavesich v. New England Life</u>

Insurance Co., 50 S.E. 68 (Ga. 1905), the first Georgia case to recognize a right to privacy, Justice Cobb noted:

> In Murray v. Lithographic Co., 28 N.Y. Supp. 271, a case decided by the court of common pleas of New York City and County, it was held that a person can not sue to enjoin the publication of a portrait of his infant child, or for damages caused thereby. This decision was undoubtedly correct; for if there was any right to sue for a violation of the right of privacy, the cause of action was in the child and not in the parent.

Id. at 77. More recently, in Alonso v. Parfet, the Georgia Supreme Court stated, "One who makes an unsanctioned appropriation of another's name or likeness for his own benefit may be liable **to that person** in tort." 325 S.E.2d 152, 153 (Ga. 1985) (emphasis added). Given this logic and the fact that the plaintiff has pointed to no Georgia law recognizing a relational right to privacy, this court declines to recognize a relational right here.

Because the right to privacy in Georgia is particular only to the person whose privacy has been invaded, McClendon's invasion of privacy claim, brought on her own behalf, fails. The defendants are entitled to summary judgment on Count I.

**B. Count II - Negligence**

In the second count of the complaint, the plaintiff alleges that the defendants breached legal duties imposed on them by O.C.G.A. § 39-2-18(a) and § 39-2-11 by failing to receive the

7

appropriate paperwork prior to Washington's appearance on the Show. In response, the defendants argue that they have not breached these duties, because they are inapplicable to the circumstances of this dispute.

### 1. O.C.G.A. § 39-2-18(a) is Inapplicable to This Case

O.C.G.A. § 39-2-18(a) states:

(a) Notwithstanding any other provisions of this chapter to the contrary, nothing in this chapter shall apply to any minor **employed** as an actor or performer in motion pictures or theatrical productions, in radio or television productions, in any other performance, concert, or entertainment, or to any minor employed in the making of phonographic records or as an advertising or photographic model, provided that the written consent of the Commissioner of Labor must be first obtained.

(emphasis added). The plaintiff takes the position that this statute imposed a duty on defendants to obtain the written consent of the Commissioner of Labor of the state of Georgia prior to allowing Washington to appear on the Show.

This statute is inapplicable in this case because Washington was not "employed" by the Show. She was paid for her single appearance, but the plaintiff has not shown any evidence or made any allegation that Washington had been **hired** by the defendants to be an employee. Because a single guest appearance does not amount to "employment," the statute imposed no duty on the defendants.

8

McClendon's claim on the basis of O.C.G.A. § 39-2-18(a) also fails because the statute is not designed to protect the rights of parents, so it grants her no personal cause of action. The purpose of the statute is to ensure that working environments are suitably safe for child performers. Nowhere in its text does the statute require even the consultation of a parent before the consent is issued. The plaintiff has stated in her brief that, in order to base a claim on the violation of a statutory duty, "the person claiming it must be within the class for whose benefit the statute was passed." Pls.' Br. 15 [Doc. No. 36]. Therefore, even if the statute did apply, McClendon's claim would still fail.

As a final note, Washington's appearance on the Show occurred in the state of New York, where Georgia labor law does not apply. Therefore, the defendants are not bound by this statute, and the plaintiff may not rest a claim upon any alleged violation thereof by defendants.

### 2. O.C.G.A. § 39-2-11 is Inapplicable to This Case

O.C.G.A. § 39-2-11 states that no minor between the ages of 12 and 16 years may be employed unless a certificate verifying the child's age and fitness for employment is first obtained from the child's school superintendent or other authorized agent. Like the

9

statute from the previous section, O.C.G.A. § 39-2-11 is inapplicable because it applies to circumstances that do not exist in this case. The reasons this statute does not apply are identical to those listed in the previous section.

### 3. O.C.G.A. § 19-7-1(a) is Inapplicable to This Case

Although it is only mentioned in the plaintiff's opposition brief [Doc. No. 36, at 13] and not in the original complaint, the court notes that O.C.G.A. § 19-7-1(a) imposes no duty to obtain parental consent before entering into otherwise lawful transactions with minor children. The plaintiff finds significance in the following statutory language: "Until a child reaches the age of 18 or becomes emancipated, the child shall remain under the control of his or her parents, who are entitled to the child's services and the proceeds of the child's labor." O.C.G.A. § 19-7-1(a). The plaintiff argues that this language imposes a legal duty on the defendants not to remove a minor from parental control without parental consent. However, this is erroneous; this statute simply entitles parents to the income earned by their children up to the point of emancipation or attainment of majority status.

Because the plaintiff cannot point to any plausible source of duty, her claim of negligence fails. The defendant is entitled to summary judgment on Count II.

## IV. Conclusion

For the foregoing reasons, the defendants' motion for summary judgment [Doc. No. 31] is GRANTED. The clerk is DIRECTED to close this action.

SO ORDERED, this 24th day of July, 2012.

<u>/s/ Charles A. Pannell, Jr.</u>
CHARLES A. PANNELL, JR.
United States District Judge

11